# Agreement For Sale And Purchase Of Assets

DATE        :    7th June 2001

PARTIES     :    (1)  **NEW SAIPAN DEVELOPMENT, INC.**, a corporation incorporated under the laws of the Commonwealth of the Northern Mariana Islands whose address is situate at Dept. 295, PMB 10001 Saipan, MP 96590-8901 ("the Vendor")

                 (2)  **KEVIN INTERNATIONAL CORPORATION**, a corporation incorporated under the laws of the Commonwealth of the Northern Mariana Islands whose registered office is situate at Chalan Laulau, P.O. Box 500166, Saipan, CM-MP 96950 ("the Purchaser")

WHEREAS :

The Vendor has for some time past carried on the Business (as hereinafter defined) and has agreed to sell to the Purchaser who has agreed to purchase the assets of the Business on the terms and conditions hereinafter appearing

NOW IT IS HEREBY AGREED :-

1. **Interpretation**

1.1    In this Agreement and in the Schedules hereto the following words and expressions shall unless the context otherwise requires have the following meanings :-

| | |
|---|---|
| "Assets" | the Premises, the Plant and Machinery, the Stock, the Benefit of the Continuing Contracts, the Records and all other property rights and assets belonging to the Vendor in connection with the Business other than those items which are expressly excluded from the sale and purchase by Clause 2.2; |
| "Business" | the business or businesses of construction, equipment leasing, property leasing carried on by the Vendor as at the Transfer Date at Saipan; |
| "Completion" | completion of the sale and purchase in accordance with Clause 4; |
| "Continuing Contracts" | all contracts and engagements in force or orders pending at the Transfer Date to which the Vendor is a party in connection with the Business; |
| "Continuing Employees" | the employees of the Vendor engaged in the Business whose names are set out in the Third Schedule; |
| "Debts" | save as otherwise expressly agreed herein, all book and other debts and prepayments belonging to the Vendor and all bills |

DEFENDANT'S EXHIBIT C

receivable held by the Vendor and rights in relation thereto the benefit of all securities therefor of all guarantees in respect thereof;

| | |
|---|---|
| "Plant and Machinery" | the items more particularly described in Part II of the First Schedule; |
| "Premises" | the land and buildings more particularly described in Part I of the First Schedule; |
| "Records" | all such records, books, lists of customers and suppliers, contracts and licences relating to the Business, records relating to the Continuing Employees, certificates and other documents or information relating to the Business as the Purchaser may reasonably require and including the Certificate of Incorporation, seal and statutory books; |
| "Retained Employees" | all the employees of the Vendor engaged in the Business other than the Continuing Employees; |
| "Stock" | all the raw materials work-in-progress unfinished goods and finished products of the Business at the Transfer Date including fuel canteen and office stocks engineering stocks garage stock packaging materials consumable stores stationery and advertising and promotional material; |
| "Transfer Date" | close of business on 14th June 2001; |

1.2   Unless the context otherwise requires :-

　　1.2.1   a reference to any statute or statutory provision shall be construed as a reference to that statute or provision as amended extended consolidated or re-enacted (whether before or after the date hereof and whether with or without modification) from time to time or any former statutory provision or rule of law which such statute or statutory provision has replaced or modified and shall include any order regulation instrument or other subordinate legislation made under the relevant statute; and

　　1.2.2   the masculine gender shall include the feminine and neuter and the singular number shall include the plural and vice versa and references to persons shall include corporations.

1.3   The headings are inserted for convenience only and shall not affect the interpretation of this Agreement.

1.4   The Purchaser may decide that the Business and the Assets shall be operated by and vested in a subsidiary of the Purchaser and without prejudice to any obligations or liability owed hereunder by the Purchaser may direct that some or all of the Assets shall be vested in such subsidiary with the result that appropriate references in this Agreement to the Purchaser shall be deemed to be references to such subsidiary.

**Sale and Purchase of Business and Assets**

2.1 Subject to the terms and conditions hereof the Vendor shall sell as beneficial owner and the Purchaser shall purchase the Assets free from all liens charges and encumbrances as from the Transfer Date.

2.2 There shall be excluded from the sale and purchase hereby agreed upon :-

   2.2.1 any actual of potential claim under any insurance policy in respect of any event before the Transfer Date; and

   2.2.2 the benefit of any claim made by the Vendor prior to the Transfer Date for any governmental or regional assistance or grant.

3. **Purchase Price**

3.1 The purchase price for the sale and purchase of the Assets shall be the sum of US Dollars Five Hundred Thousand (US$500,000.00) or its Hong Kong Dollars equivalence exchanged at the rate of US$1.00 to HK$7.76.

3.2 All amounts payable or receivable in respect of the Business or the Assets which are of a periodical nature (including rent, rates, service charges, insurance premiums, gas, water, electricity and telephone charges, royalties and other outgoings or receipts relating to the Business or the Assets and salaries, wages and other emoluments of the Continuing Employees) shall unless otherwise agreed be apportioned between the Vendor and the Purchaser as at the Transfer Date on a day to day basis or in relation to amounts payable which are specifically referable to the extent of user of any property or any rights according to the extent of such user and shall be applied in adjustment of the payment to the Vendor on the Completion Date.

3.3 The purchase price for sale and purchase of the Assets shall be paid by the Purchaser to the Vendor by banker's draft on Completion save that where in the case of any leasehold property any licence or consent required for the assignment or transfer of the same to the Purchaser has not been obtained by the date fixed for Completion the price attributable to such leasehold property shall be withheld and shall be paid only on the completion of the assignment or transfer thereof.

4. **Completion**

4.1 Completion of the sale and purchase shall take place on 14th June 2001 or such other date as the Vendor and the Purchaser shall mutually agree at the offices of the Vendor or at such other place or places as the Vendor and the Purchaser shall mutually agree.

4.2 Upon Completion the Vendor shall deliver or make available to the Purchaser :-

   4.2.1 such of the Assets as shall be capable of transfer by delivery;

   4.2.2 vacant possession of the Premises and management and control of the Business;

34390S&P.DOC

4.2.3 such conveyances, assurances, transfers and assignments (together with all the documents of title) as the Purchaser may require in respect of Assets other than those in respect of which title passes by delivery and acknowledgments from third parties holding any of the Assets or the documents of title that they hold them for the Purchaser absolutely;

4.2.4 the written consent of any person including any mortgagee or debenture holder whose consent is required for the sale of any of the Assets or any part thereof and the written licence of any landlord or superior landlord whose consent is required for the assignment of any leasehold property comprised in the Premises.

4.3 Against compliance by the Vendor with its obligations under this Clause 4 the Purchaser shall pay the Vendor the purchase price of the Assets as provided in Clause 3.

## 5. Transitional Provisions

5.1 Subject to Clause 6 the Vendor shall pay satisfy and discharge all the debts claims liabilities and obligations whatsoever of the Vendor in connection with the Business incurred or arising prior to the Transfer Date including warranty or other claims in respect of goods or services supplied prior to such time and shall at all times keep the Purchaser fully indemnified from and against all such debts claims liabilities and obligations.

5.2 From the Transfer Date and until Completion the Vendor shall carry on the Business as Trustee for the Purchaser and shall account accordingly. During such period the Vendor undertakes to carry on the Business in the normal course and in consultation with the Purchaser and not to incur any unusual onerous or long term liabilities in respect of the Business without the Purchaser's prior written consent and the Purchaser undertakes to indemnify the Vendor against all liabilities incurred by it in respect of the Business during such period except liabilities incurred other than in the normal course of business or without consultation with the Purchaser and except for any unusual onerous or long term liabilities incurred without the Purchaser's prior written consent.

5.3 The Purchaser shall after Completion be entitled with a view to preserving the goodwill and the continuity of the Business at its absolute discretion to settle as it thinks fit any claim by or dispute with any person falling to be dealt with under Clause 5.1 and so that any payment or allowance to or forbearance with the person in connection with such settlement shall be for the account of the Vendor and be deemed a liability of the Vendor.

## 6. Continuing Contracts

6.1 Subject to the consent of any third party (where necessary) the Purchaser shall after Completion carry out and complete the Continuing Contracts for its own benefit and shall indemnify and keep indemnified the Vendor in respect thereof but shall not be liable to pay any sums owing by the Vendor in relation to the Continuing Contracts at the Transfer Date.

6.2 The Vendor shall if so requested by the Purchaser use all reasonable endeavours to obtain the consent of any third party whose consent is required to an assignment or novation of any Continuing Contract and shall subject to such consent effect or join in such an assignment or

34390S&P.DOC                                    4

novation.

6.3 Failing or pending any required consent as referred to in Clause 6.2 the Vendor shall remain liable under any such Continuing Contract as a contracting party but the Purchaser may if it notifies the Vendor accordingly at its own cost and expense assume the obligations under such contract as agent for the Vendor which shall promptly account to the Purchaser for all sums received therefrom and procure that the Purchaser shall be entitled to the full benefit thereof.

6.4 The Vendor will at the Purchaser's request and expense give to the Purchaser all assistance in the power of the Vendor to enable the Purchaser to enforce the Continuing Contracts assumed by the Purchaser pursuant to this Clause 6 against the other contracting party or parties.

7. **Employees and Pensions**

7.1 The parties hereto acknowledge and agree that the contracts of employment between the Vendor and the Continuing Employees (save insofar as such contracts relate to any occupational pension scheme) will have effect after Completion as if originally made between the Purchaser and such employees.

7.2 Upon or as soon as practicable after Completion the Vendor and the Purchaser shall jointly communicate to the Continuing Employees a notice to the effect that their contracts of employment will take effect after Completion as specified in Clause 7.1.

7.3 The Vendor shall fully indemnify the Purchaser against all costs, claims, expenses or liabilities whatsoever howsoever arising, incurred or suffered by the Purchaser in relation to :-

7.3.1 the employment of the Retained Employees or the termination of such employment;

7.3.2 anything done or omitted to be done before Completion by the Vendor (a) in respect of any person employed by the Vendor prior to Completion which after such date is deemed to have been done by the Purchaser and (b) by way of consultation with, or the provision of information to or in respect of any persons employed by the Vendor prior to Completion or to the representatives of any such persons.

8. **Representations, Warranties and Undertakings**

8.1 The Vendor hereby represents and warrants to and undertakes with the Purchaser (to the intent that the provisions of this Clause shall continue to have full force and effect notwithstanding Completion) in the terms set out in the Second Schedule and acknowledge[s] that the Purchaser in entering into this Agreement is relying on such representations, warranties and undertakings (which in this Clause are together referred to as the "Warranties") and that the Purchaser shall be entitled to treat the same as conditions of this Agreement.

8.2 The Warranties shall be separate and independent and save as expressly otherwise provided shall not be limited by reference to any other paragraphs of the Second Schedule or anything in this Agreement.

The Vendor shall not (save only as may be necessary to give effect to this Agreement) do or allow and shall procure that no act or omission shall occur before Completion (or in the case of the Premises the date of actual completion) which would constitute a breach of any of the Warranties if they were given at Completion (or the date of actual completion as the case may require) or which would make any of the Warranties inaccurate and misleading if they were so given.

8.4    The Vendor shall pending Completion immediately notify the Purchaser in writing of any event which results in or may result in any of the Warranties being inaccurate or misleading and shall supply to the Purchaser such information and certificates as the Purchaser may reasonably require having regard to the Warranties.

8.5    In the event of it being found prior to Completion that any of the Warranties are incorrect or have not been fully carried out in any material respect or in the event of any matter or thing arising or becoming known or being notified to the Purchaser which is inconsistent with any of the Warranties or any other provision of this Agreement or in the event of the Vendor becoming unable or failing to do anything required to be done by it on or before Completion the Purchaser shall not be obliged to complete the purchase hereby contemplated and the Purchaser may (by written notice only) rescind this Agreement without liability on its part.

9.     **Access to Information**

9.1    The Vendor undertakes with the Purchaser :-

   9.1.1    notwithstanding Completion to continue to give to the Purchaser at the Purchaser's expense such information and assistance as it may reasonably require relating to the Business and the know-how connected therewith and in particular to its customers and suppliers, its current contracts and engagements and trade debtors and trade creditors;

   9.1.2    to pass on promptly to the Purchaser any esquires relating to the Business received after Completion;

   9.1.3    to allow reasonable access for the Purchaser or its duly authorised representatives at all reasonable times upon prior notice to all such relevant books, documents and information not delivered to the Purchaser hereunder as the Purchaser may require in relation to the Continuing Contracts and/or the Continuing Employees and/or otherwise relating to the conduct of the Business prior to Completion and/or anything in connection with this Agreement and to afford the Purchaser or its duly authorised representatives the opportunity to take copies thereof or extracts therefrom and not to destroy the same.

9.2    The Purchaser agrees to allow reasonable access for the Vendor or its duly authorised representatives at all reasonable times upon prior notice to the Records for the purpose only of inspection or taking copies thereof or extracts therefrom in relation to matters relating to the affairs of the Vendor prior to Completion.

10.    **General and Miscellaneous**

10.1   As on and from the Completion Date all agreements and arrangements between the Vendor

and any subsidiary company of the Vendor or any company associated with the Vendor by common ownership in so far as they affect the Business or the Assets shall except as otherwise specified by the Purchaser be cancelled by mutual consent of the parties thereto without compensation.

10.2   The Vendor undertakes with the Purchaser from time to time after Completion to execute such further assurances as the Purchaser may reasonably require for the purpose of vesting in it the full benefit of this Agreement and of the properties rights and assets hereby agreed to be sold.

10.3   All warranties representations undertakings and other obligations made or undertaken by the parties hereto under the terms of this Agreement shall (except in so far as the same may be fully performed on Completion) continue in full force and effect notwithstanding Completion.

10.4   Each party hereto shall pay its own costs and expenses in relation to the preparation and execution and carrying into effect of this Agreement.

10.5   This Agreement together with any documents referred to herein constitutes the whole Agreement between the parties hereto and no variations thereof shall be effective unless made in writing. The Purchaser hereby acknowledges that it is not entering into this Agreement in reliance upon any representation other than those expressly made or referred to herein.

10.6   This Agreement shall be binding on and shall enure for the benefit of each party's successors and assigns.

10.7   This Agreement shall be construed and take effect in all respects in accordance with the law of Hong Kong Special Administrative Region and the parties hereby agree to submit to the non-exclusive jurisdiction of the Hong Kong Courts.

10.8   Any notice to be given under this Agreement shall be deemed to be duly served when delivery of it is recorded (in the case of first class recorded delivery post) or when delivered (in the case of telemessage or personal delivery) or dispatched (in the case of international telegram, telex or communication by word processor or facsimile equipment) to the relevant party's address appearing in this Agreement or to such other office or address as that party may hereafter specify to the other party hereto by notice in writing.



## FIRST SCHEDULE

### Part I

### Premises

1. San Antonio Village, Lot No.001137 (917 square meters)

2. Chalan Kiya, Portion / Part of Lot No.397 (approximately 2,602 square meters)

### Part II

### Plant and Machinery

| | |
|---|---|
| Bulldozer TY-220 | 1 (one) |
| Bulldozer D-80 | 1 (one) |
| Bulldozer S-120 | 1 (one) |
| Dump Truck | 2 (two) |
| Payloder ZL-50 | 1 (one) |
| Oil Truck CA-140 | 1 (one) |
| Generator 120 KW | 2 (two) |
| Back Hoe | 1 (one) |

# SECOND SCHEDULE

## Warranties

1. **Assets**

   1.1 **Ownership of assets**

   1.1.1 Except for current assets subsequently acquired, sold or realised in the normal course of business the Vendor owns absolutely all the Assets.

   1.1.2 The Vendor has not disposed of or agreed to dispose of or granted or agreed to grant any security or other encumbrance in respect of any of the Assets.

   1.1.3 None of the Assets is subject to, and there is no agreement or commitment to give or create, any option, lien or encumbrance.

   1.1.4 None of the Assets has been purchased on terms that property does not pass to the Vendor until full payment is made by it to the supplier.

   1.1.5 There has been no exercise, purported exercise or claim for any charge, lien, encumbrance or equity over any of the Assets and there is no dispute directly or indirectly relating to any of the Assets.

   1.2 **Plant and Machinery**

   1.2.1 Part II of the First Schedule contains full and accurate details of the Plant and Machinery.

   1.2.2 The plant, machinery, vehicles and other equipment comprised in the Plant and Machinery :-

   (a) are in a proper state of repair and condition and satisfactory working order; and

   (b) have been regularly and properly maintained.

   1.3 **Stocks**

   1.3.1 The Stocks are of merchantable quality and saleable at normal selling prices.

   1.3.2 None of the Stocks is obsolete, unusable, unmarketable or inappropriate or of limited value in relation to the Business and none of the Continuing Contracts is likely to result in this being untrue.

**Documents stamped**

1.4.1   All documents which in any way affect the right, title or interest of the Vendor in or to any of the Assets and which attract stamp duty have been duly stamped within the requisite period for stamping.

## 2.   Trading

### 2.1   Licences and consents

2.1.1   The Vendor has obtained all necessary licences and consents for the proper carrying on of the Business and is not in breach of any of their terms or conditions.

### 2.2   Insurance

2.2.1   All the Assets of an insurable nature are and have at all material times been insured, in amounts representing their full replacement or reinstatement value, against fire and other risks normally insured against by persons carrying on business of the same class as the Business.

2.2.2   The Business and the Assets are and have at all material times been adequately covered against accident, damage, injury, third party loss, loss of profits and other risks normally covered by insurance.

2.2.3   All insurances relating to the Business or the Assets are currently in full force and effect and nothing has been done or omitted to be done which could make any policy of insurance void or voidable.

### 2.3   Litigation

2.3.1   Save as disclosed to the Purchaser as at the date of this Agreement, the Vendor is not engaged in any litigation or arbitration proceedings as plaintiff or defendant, except for debt collection of sums not exceeding an aggregate of US$500,000.00, and there are no such proceedings pending or threatened either by or against the Vendor effecting the Business and there are no facts which are likely to give rise to any litigation or arbitration.

### 2.4   Vendor's activities

2.4.1   The Vendor is entitled to enter into and carry out the provisions of this Agreement and has full power and authority to sell the Assets to the Purchaser without obtaining the consent of any third party.

2.4.2   Compliance with the terms of this Agreement, and any document entered into by the Vendor in accordance with it, does not and will not conflict with or result in a breach of any of the provisions of the Vendor's Articles of Incorporation and By-Laws.

### 3. Continuing Contracts

**3.1 Disclosure of contracts**

3.1.1 The Continuing Contracts constitute all the contracts and other engagements, whether written or oral, referable to the Business to which the Vendor is now a party, apart from the contracts of employment of the employees.

**3.2 Default under agreements**

3.2.1 The Vendor is not nor would it, if the sale of the Business did not take place, with the lapse of time become :-

(a) in default under any of the Continuing Contracts or in respect of any other obligations or restrictions binding upon it in relation to the Business nor has it waived any rights or privileges under any of them;

(b) in default under any provisions existing by reason of membership of any association or body relating to the Business;

(c) liable in respect of any representation or warrant (whether express or implied) or matter giving rise to a duty of care on the part of the Vendor relating to the Business.

3.2.2 No threat or claim of default under any of the Continuing Contracts or any other agreement, instrument or arrangement to which the Vendor is a party relating to the Business or the Assets has been made and is outstanding against the Vendor and there is nothing whereby any of the Continuing Contracts or any other such agreement, instrument or arrangement may be terminated or rescinded by any other party or whereby the terms may be worsened as against the Vendor or the Purchaser or whereby the Business or the Assets may be prejudiced as a result of anything done or omitted or permitted to be done by the Vendor.

### 4. Premises

**4.1 Use of Premises**

4.1.1 The Vendor is in occupation of the Premises for the purposes of the Business.

4.1.2 The Vendor does not use or occupy any property in connection with the Business other than the Properties.

**4.2 Encumbrances**

4.2.1 The Premises are free from any mortgage, debenture, charge, lien or other encumbrance.

4.2.2 The Premises are not subject to any outgoings other than business rates, water rates and insurance premiums.

4.2.3 The Premises are not subject to any restrictive covenants, restrictions, stipulations, easements, profits a prendre, wayleaves, licences, grants, reservations or other similar rights vested in third parties.

### 4.3 Statutory obligations

4.3.1 The Vendor has complied and is complying with all applicable statutory and bye-law requirements with respect to the Premises.

4.3.2 There is no outstanding and unobserved or unperformed obligation with respect to the Premises necessary to comply with the requirements (whether formal or informal) of any competent authority exercising statutory or delegated powers.

### 4.4 Adverse orders

4.4.1 There are no compulsory purchase notices, orders, or resolutions affecting the Premises and there are no circumstances likely to lead to any being made.

4.4.2 There are no closing, demolition or clearance orders, enforcement notices or stop notices affecting the Premises and there are no circumstances likely to lead to any being made.

## 5. Employment

### 5.1 Industrial disputes and agreements

5.1.1 Save as disclosed to the Purchaser as at the date of this Agreement, none of the employees is involved in any industrial dispute and to the best of the Vendor's knowledge, information and belief there are no circumstances which may result in any industrial dispute involving any employees and none of the provisions of this Agreement, including the identity of the Purchaser, may lead to any industrial dispute.

5.1.2 The Vendor has not entered into any recognition agreement with a trade union nor has it done any act which might be construed as recognition.

### 5.2 Pensions

5.2.1 The Vendor is not under any legal or moral liability or obligation or ex-gratia arrangement or promise to pay pensions, gratuities, superannuation allowances or the like to any of the Employees.

# THIRD SCHEDULE

## Continuing Employees

To be provided by the Vendor to the Purchaser on Completion.

AS WITNESS the hands of duly authorised representatives of the parties hereto the day and year first above written.

Signed by Ng Cheong Pui, its director, )
for and on behalf of the Vendor in the )
presence of :-                          )

TO WAI KEUNG
Notary Public, Hong Kong
11th Floor, Wheelock House,
20 Pedder Street, Central, Hong Kong.

Signed by Ng Man Kin Kenneth, its )
President for and on behalf of the )
Purchaser in the presence of :-   )

TO WAI KEUNG
Notary Public, Hong Kong
11th Floor, Wheelock House,
20 Pedder Street, Central, Hong Kong.

belonging to the Vendor and all bills